The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

DALE BROWN, et al,

               Plaintiffs,

    v.

MASON COUNTY,

               Defendant.

GRUMP VENTURES, LLC,

               Petitioner,

    v.

MASON COUNTY,

               Respondent.

No. 3:20-cv-05628-TSZ

**GRUMP VENTURES, LLC'S OPENING BRIEF PURSUANT TO THE LAND USE PETITION ACT, CHAPTER 36.70C RCW**

**Noting Date: May 10, 2021**

GRUMP VENTURES, LLC'S OPENING BRIEF

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

        A.      The Scott Family has continuously operated a gravel mine since the
                1950s. ........................................................................................................... 2

        B.      Grump obtains a SM-6. ................................................................................ 3

        C.      Succumbing to political pressure, the County rescinds the SM-6. ............... 4

        D.      The proceedings below. ............................................................................... 5

III.    STANDARD OF REVIEW ..................................................................................... 6

IV.     ARGUMENT ........................................................................................................ 8

        A.      The Decision constitutes an erroneous interpretation and application
                of the Code and common law pertaining to nonconforming uses and the
                diminishing assets doctrine. ........................................................................ 8

                1.      Physical extraction of resources is not required to maintain a
                        non-conforming mining use. ............................................................ 9

                2.      The County's issuance of the SM-6 was a final land use decision
                        that conclusively established that Grump had engaged in mining
                        activities. ....................................................................................... 13

                3.      MCC 17.05.016(a) requires an intent to abandon to extinguish a
                        nonconforming use. ........................................................................ 17

        B.      The Decision's finding that Grump ceased mining operations for two
                years is not supported by substantial evidence. .......................................... 20

        C.      The Decision violates Grump's constitutional rights. ................................. 22

V.      CONCLUSION ................................................................................................... 24

GRUMP VENTURES, LLC'S OPENING BRIEF - i

**Van Ness**
**Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

**TABLE OF AUTHORITIES**

**Cases**

*Andrew v. King Cty*,
    21 Wash. App. 566 (1978) .......................................................................... 19, 20

*Chelan Cty. v. Nykreim*,
    146 Wash.2d 904 (2002) ............................................................................ 13, 15

*Choi v. City of Fife*,
    60 Wash. App. 458 (1991) .............................................................................. 19

*City of Univ. Place v. McGuire*,
    144 Wash.2d 640 (2001) ........................................................................ passim

*Davidson v. Kitsap Cty.*,
    86 Wash. App. 673, 680 (1997) ...................................................................... 7

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
    920 F.2d 1496 (9th Cir. 1990)......................................................................... 24

*Dep't of Transp. v. City of Seattle*,
    192 Wash. App. 824 (2016) ............................................................................ 17

*Du Page Cty. v. Elmhurst Chicago Stone Co.*,
    165 N.E.2d 310 (Ill. 1960) ............................................................................... 9

*Ernst v. Johnson Cty*,
    522 N.W.2d 599 (Iowa 1994)......................................................................... 10

*Habitat Watch v. Skagit Cty.*,
    155 Wash.2d 397 (2005) ................................................................................ 13

*Hansen Brothers Enters, Inc. v. Bd. of Supervisors*,
    907 P.2d. 1324 (Cal. 1996) .................................................................. 10, 18, 19

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Distr.*,
    307 F.Supp.3d 1010 (E.D. Cal. 2018) .......................................................... 23, 24

*James v. Cty. of Kitsap*,
    154 Wash.2d 574 (2005) ................................................................................ 13

*King Cty. v. High*,
    36 Wash.2d 580 (1950) .................................................................................. 19

*Kuhl v. Zoning Hr'g Bd. of Greene Twp.*,
    415 A.2d 954 (Pa. 1980) ................................................................................ 19

GRUMP VENTURES, LLC'S OPENING BRIEF - ii



1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

*Lakey v. Puget Sound Energy, Inc.*,
    176 Wash.2d 909 (2013) ................................................................. 21

*Lockary v. Kayfetz*,
    917 F.2d 1150 (9th Cir. 1990) ........................................................ 24

*Maytown Sand and Gravel, LLC v. Thurston Cty.*,
    191 Wash.2d 392 (2018) ........................................................... 23, 24

*McMilian v. King Cty.*,
    161 Wash. App. 581 (2011) ............................................................ 23

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .......................................................................... 18

*Nghiem v. State of Wash.*,
    73 Wash. App. 405 (1994) ................................................................ 7

*Nielson v. Wash. State Dep't of Licensing*,
    177 Wash. App. 45 (2013) .............................................................. 22

*Phoenix Dev., Inc., v. City of Woodinville*,
    171 Wash.2d 820 (2011) ................................................................... 7

*Polk Cty. v. Martin*,
    636 P.2d 952 (Or. 1981) ................................................................. 16

*Polygon Corp. v. City of Seattle*,
    90 Wash.2d 59 (1978) ..................................................................... 24

*Rhod-A-Zalea & 35th, Inc. v. Snohomish Cty.*,
    136 Wash.2d 1 (1998) ....................................................................... 9

*River Springs, Ltd. Liability Co. v. Bd. of Teton Cty. Comm'rs*,
    899 P.2d 1329 (Wyo. 1995) ........................................................... 16

*Rosema v. City of Seattle*,
    166 Wash. App. 293 (2012) ............................................................ 11

*S. Cty. Sand & Gravel Co. v. Town of Charlestown*,
    446 A.2d 1045 (R.I. 1982) .............................................................. 19

*Short v. Clallam Cty*,
    22 Wash. App. 825 (1979) ................................................................ 8

*Skagit Cty. v. Wash. State Dep't of Ecology*,
    93 Wash.2d 742 (1980) ..................................................................... 7

*Sleasman v. City of Lacey*,
    159 Wash.2d 639 (2007) ................................................................. 20

GRUMP VENTURES, LLC'S OPENING BRIEF - iii

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

*State v. Arndt*,
  194 Wash.2d 784 (2019) .......................................................................... 21

*Swenson v. Siskiyou Cty.*,
  498 F. App'x 719 (9th Cir. 2012)........................................................... 24

*Tateuchi v. City of Bellevue*,
  478 P.3d 142 (Wash. Ct. App. 2020) ................................................ 11, 20

*Thurston Cty. v. W. Wash. Growth Mgmt. Hr'gs Bd.*,
  137 Wash. App. 781 (2007) ...................................................................... 8

*Town of W. Greenwich v. A. Cardi Realty Assocs.*,
  786 A.2d 354 (R.I. 2001) ........................................................................ 10

*Union Quarries, Inc. v. Bd. of Cty Comm'rs of Johnson Cty.*,
  478 P.2d 181 (Kan. 1970) ........................................................................ 19

*Van Sant v. City of Everett*, 69 Wash. App. 641 (1993)............................ 18, 21

*Vickers v. Franklin Cty. Bd. of Comm'rs*,
  444 P.3d 380, 2019 WL 3242274 (Kan. Ct. App. 2019) ........................ 16

*Yim v. City of Seattle*,
  194 Wash.2d 682 (2019) .......................................................................... 23

**Statutes**

Ch. 78.44 RCW ..................................................................................... 12, 19

RCW 34.05.570(1)(b) ................................................................................. 18

RCW 36.70C.010 ....................................................................................... 14

RCW 36.70C.040(3) ................................................................................... 13

RCW 36.70C.130(1) ..................................................................................... 7

RCW 36.70C.130(1)(d) ................................................................................. 7

RCW 64.40.020(1) ..................................................................................... 18

RCW 78.44.031(8) ..................................................................................... 12

RCW 78.44.031(17)(c) ............................................................................... 12

RCW 78.44.220 ......................................................................................... 12

GRUMP VENTURES, LLC'S OPENING BRIEF - iv



1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

1

**Regulations**

2

WAC 332-18-01002 ...................................................................................................... 3, 15

3

**Mason County Code**

4

MCC 17.05.016 ......................................................................................................... passim

5

MCC 17.06.010 ................................................................................................................ 12

6

MCC 8.52.030 ................................................................................................................. 12

7

**Other Authorities**

8

Moskowitz, Harvey S. and Lindbloom, Carl, G.; *The New Illustrated Book of
    Development Definitions*. New Brunswick, NJ, Center for Urban Policy Research,
    1993 ............................................................................................................ 12, 19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GRUMP VENTURES, LLC'S OPENING BRIEF - v



1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

## I.    INTRODUCTION

In June 2017, Mason County Community Services ("County") issued a County or Municipality Approval for Surface Mining Form SM-6 ("SM-6") to Petitioner Grump Ventures, LLC ("Grump"), verifying that Grump's proposed surface mine and subsequent use after reclamation were consistent with local zoning and land use regulations and noting that the proposed mine was consistent with the Washington common law principle of the diminishing assets doctrine. The SM-6 was never challenged or appealed and Grump, relying on the County's approval, proceeded to expand the mine. More than *two years* later, the County rescinded the SM-6 (the "SM-6 Recission"), as a result of political pressure exerted by mine opponents during private meetings with County officials.

Grump appealed the SM-6 Recission to the Mason County Hearing Examiner (the "Examiner"). The Examiner subsequently affirmed the County's SM-6 Recission in a legally flawed and internally inconsistent opinion (the "Decision"). The Examiner properly found that the SM-6 is immune from collateral attack under the Land Use Petition Act ("LUPA") but proceeded to allow the County and project opponents to do just that. The Examiner misinterpreted the Mason County Code ("MCC" or "Code") and common law pertaining to nonconforming uses and the diminishing assets doctrine to conclude that Grump must have engaged in the physical act of mining to maintain its nonconforming use. The Examiner then wrongly held that Grump's nonconforming mining rights were terminated by two years of cessation of use during a period that included time prior to issuance of the SM-6.

The Examiner also improperly shifted the burden of proof to Grump, exhibited bias

GRUMP VENTURES, LLC'S OPENING BRIEF– 1

115042



1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

and unfounded speculation, and completely disregarded the facts presented by Grump, including evidence that the County failed to rebut. Further, the Decision violated Grump's constitutional due process rights—depriving its constitutionally protected property interests, business goodwill, and the right to devote its land to a legitimate use. The SM-6 Recission is irrational, arbitrary, and lacks justification.  It should be reversed.

## II.      STATEMENT OF FACTS

### A.      The Scott Family has continuously operated a gravel mine since the 1950s.

Grump is a family-run LLC that is owned by Russel Scott and operated by members of the Scott family. ECF No. 19-1 at 96. Grump owns six-contiguous parcels located at 4952 NE North Shore Road, Belfair, Washington (the "Property"). *Id.* Since the 1950s, the Scott family has operated a gravel mine at the Property. *Id.* The County, contractors, and local residents have continuously taken and used gravel from the mine. *Id.* at 97.

Kari Scott, Russell's mother, joined the Scott family in 1953, when the gravel mine was already operating. ECF No. 19-2 at 12. In 1956 she moved into a house located 100 feet from the gravel mine's driveway and continues to reside there. *Id.* From her home she has regularly observed and documented mining operations at the Property. *Id.* at 12–13.

The County has regularly used the mine to obtain gravel for road repairs and clean ditch spoils. *Id.* at 23–24. The County has also transported materials (e.g. gravel, rock, stone, earth, and other minerals) to the mine. *Id.* These activities have occurred since at least 2009 and most recently between February and April 2017. *Id.* at 24–25. In 2014 and 2015, the County stockpiled and hauled rock chips and aggregate to and from the mine for use on County roads.  *Id.* at 24, 29.

GRUMP VENTURES, LLC'S OPENING BRIEF– 2

115042



Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

The mine's gravel is valuable, because it is high quality and can be used without any processing. *Id.* at 8; ECF No. 21-1 at 96:5–20. Between February and April 2017, Peninsula Topsoil, LLC ("Peninsula Topsoil"), purchased and sold gravel from the mine. ECF No. 19-2 at 8. During this time, Peninsula Topsoil also dug test holes to examine gravel quality, cleared the area for equipment and truck access, and housed equipment at the mine. *Id.*

**B.      Grump obtains a SM-6.**

In 2017, due to an increase in demand and market for gravel, Grump joined Peninsula Topsoil to seek a Reclamation Permit from the Washington State Department of Natural Resources ("DNR") to expand mining operations within the boundaries of property long-held by the Scott family. *Id.* at 25. Grump hired Wnek Engineering to prepare the permit application and assemble the necessary supporting technical information. *Id.* It also engaged EnviroSound Consulting to prepare a geotechnical report and slope stability analysis in support of the project. *Id.*

The DNR Reclamation Permit process requires submission of a SM-6. The SM-6 documents the county's "approval of mining and of the subsequent use of the mine site." WAC 332-18-01002. Accordingly, the County must verify whether the proposed surface mine and subsequent use of the land after reclamation are "approved under local zoning and land use regulations" and "consistent with the local land use plan/designation" for the identified parcels. ECF No. 19-1 at 104.

The SM-6 in this case addressed two of the parcels comprising the mine. In the mid-1990s, the County rezoned these parcels from timberland to Rural Residential 5 ("RR5"). *Id.* at 97. During the rezone process, the Scott family stated their intent to conduct mining

GRUMP VENTURES, LLC'S OPENING BRIEF– 3

115042

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

operations on these specific parcels in order to continue its mining operation. *Id.* The County Commissioners assured the Scotts that they would maintain a nonconforming use right to surface mining on the rezoned parcels, and that the rezone would not eliminate their right to mine. *Id.* at 97–98. The County approved and issued Grump the SM-6 on June 30, 2017, verifying that surface mining was a legal nonconforming use on the subject parcels. *Id.* at 104. The County found that the mine was authorized by County zoning regulations and included a handwritten annotation stating that Grump's use of the mine was "found to be consistent with the diminishing assets doctrine." *Id.*

Grump and Peninsula Topsoil expended considerable time and resources to expand the mine based on the County's issuance of the SM-6. ECF No. 19-2 at 25–26. They undertook environmental analysis pursuant to the State Environmental Policy Act ("SEPA") and applied to the County for a Class IV General Forest Practice Application/Notification ("FPA") to allow timber removal at the mine. ECF No. 19-1 at 98. On June 22, 2018, the County issued and provided a notice of a Mitigated Determination of Non-Significance ("MDNS") under SEPA for the proposal. *Id.* at 106. The SEPA checklist, which the County published along with the MDNS, noted the proposal's compatibility with existing and projected land uses pursuant to the "[l]ocal zoning code, [and] SM-6 from Mason County." *Id.* at 123.

**C.   Succumbing to political pressure, the County rescinds the SM-6.**

Some members of the Belfair community opposed the proposed mine expansion. In July of 2018, a group of community activists formed the Hood Canal Gravel Mine Opposition Association ("HCGMOA"), for the express purpose of opposing the project. *Id.*

GRUMP VENTURES, LLC'S OPENING BRIEF– 4

115042

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

at 23, 29. On July 22, 2018, two HCGMOA members, visited the Scott residence and demanded withdrawal of the mining proposal. ECF No. 19-2 at 79–80, 89–90. Shaken by these events, the following day, Grump withdrew its FPA and paused the SEPA process. *Id.* at 26, 82, 89–90. Grump did not, however, intend to cease operations or abandon the mine expansion and continued to work with Wnek Engineering and additional consultants to revise its DNR application materials and obtain additional studies for an improved environmental checklist. *Id.* at 26. Consistent with its historical mining operations, on April 7 and 8, 2019, Grump extracted gravel at the mine using heavy equipment in an amount they understood was below the triggering reclamation permit limit. *Id.* at 187. The County concluded otherwise and on April 8, 2019, issued a stop work order. *Id.*

Around December 2019, some HCGMOA members met with County officials to discuss the SM-6. ECF No. 19-1 at 128–31. Grump learned of these meetings months later through public records. *Id.* at 98. On January 28, 2020, the County issued the SM-6 Rescission, an administrative decision, noting that "the County no longer maintains that the current use of the property is legal nonconforming surface mining." *Id.* at 7. Grump had no prior notice that the County was undertaking a process to rescind the SM-6. *Id.* at 98.

**D.      The proceedings below.**

Grump appealed the SM-6 Rescission on February 10, 2020. *Id.* at 1. HCGMOA intervened in the proceedings before the Examiner. *Id.* at 72. During the prehearing process, the Examiner issued two summary judgment orders. *See generally id.* at 377; ECF No. 19-2 at 231. The first concluded that the SM-6 certification served as a final land use decision immune from collateral attack. ECF No. 19-1 at 377–78. Specifically, the Examiner

GRUMP VENTURES, LLC'S OPENING BRIEF– 5

115042

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

concluded that the County could not revisit the validity of the SM-6 finding that the entirety of Grump's 66.5-acre mining site was a valid nonconforming use under the diminishing assets doctrine as of June 30, 2017. *Id.* at 390. The Examiner's second summary judgment order incorrectly concluded that Grump's nonconforming use rights could be terminated by two years of cessation of mining use, regardless of its intent to mine, for any two-year period between July 1, 2015 (two years and one day before the issuance of the SM-6) and April 7, 2019 (the last uncontested date that Grump mined). ECF No. 19-2 at 232. The Examiner further concluded that continued use required actual mining and gravel extraction, and that mining-related uses such as storage, stockpiling of materials, and the ongoing permitting efforts were insufficient to establish continued use. *Id.* at 277.

The Examiner held a virtual open-record hearing, on July 16, 22, 23 and 24, 2020. ECF No. 19-8 at 123. During the hearing, Grump provided, photos, business records, and testimony from several witnesses who testified about its mining activities between July 1, 2017 and April 8, 2019. *Id.* at 123–24. The County and HCGMOA collectively provided testimony seeking to prove that no such mining had occurred. *Id.* at 130.

The Examiner issued the Decision on August 11, 2020, denying Grump's appeal and incorporating his prior summary judgment orders. ECF No. 19-8 at 116. Grump timely appealed the Examiner's decision pursuant to the LUPA, chapter 36.70C RCW, in Thurston County Superior Court. The County subsequently removed the case to the United States District Court for the Western District of Washington.

### III.   STANDARD OF REVIEW

This Court can grant relief if Grump can establish one of the following:

GRUMP VENTURES, LLC'S OPENING BRIEF– 6

115042

**Van Ness**
**Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts; [or]

(f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

Standards (a), (b), and (f) present questions of law that courts will review de novo. *Phoenix Dev., Inc., v. City of Woodinville*, 171 Wash.2d 820, 828, (2011). A decision is supported by substantial evidence under RCW 36.70C.130(1)(c) if there is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises." *Nghiem v. State of Wash.*, 73 Wash. App. 405, 412 (1994) (internal quotations omitted). Under RCW 36.70C.130(1)(d), "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Skagit Cty. v. Wash. State Dep't of Ecology*, 93 Wash.2d 742, 748 (1980) (internal quotations omitted). Courts will view the factual evidence and any reasonable inferences in the light most favorable to the party that prevailed in the highest forum exercising fact-finding authority. *Davidson v. Kitsap Cty.*, 86 Wash. App. 673, 680 (1997). However, such deference does not apply where the factual grounds for the County's decision are erroneous or whether the County's decision is clearly an erroneous application of the law. *See, e.g.*, *Thurston Cty. v. W. Wash. Growth Mgmt.*

GRUMP VENTURES, LLC'S OPENING BRIEF– 7

115042

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

*Hr'gs Bd.*, 137 Wash. App. 781, 790 (2007) *rev'd on other grounds*, 164 Wash.2d 329 (2008) (internal citations omitted); *Short v. Clallam Cty*, 22 Wash. App. 825, 834 (1979).

## IV.   ARGUMENT

The Decision should be overturned because: (1) the Examiner's conclusion that Grump was required to show that it engaged in physical extraction of gravel at the site  to maintain its nonconforming use right to mine, that the County could rescind Grump's SM-6 based on evidence of abandonment prior to its issuance, and that Grump's intent to mine was irrelevant constitutes erroneous interpretation and application of law; (2) the conclusion that Grump ceased mining operations for two years was not supported by substantial evidence when viewed in light of the record as a whole; and (3) the Decision violates Grump's constitutional rights.

### A.   The Decision constitutes an erroneous interpretation and application of the Code and common law pertaining to nonconforming uses and the diminishing assets doctrine.

The Examiner erred in upholding the County's SM-6 Recission based on the conclusion that Grump lost its nonconforming use mining rights through cessation of use from April 3, 2017 through April 3, 2019. ECF No. 19-8 at 116. The Examiner held that continued use required physical mining (e.g. gravel extraction) and that other mining related activities were insufficient to establish ongoing use. ECF No. 19-2 at 277. This decision ignored well-established Washington common law regarding nonconforming uses and the diminishing assets doctrine. In addition, the Examiner wrongly held that although the County could not collaterally attack the issuance of the SM-6, they could nevertheless rely on evidence of mining cessation prior to SM-6 issuance on June 30, 2017 to establish

GRUMP VENTURES, LLC'S OPENING BRIEF– 8

115042

Van Ness Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

termination of Grump's nonconforming use rights effective April 3, 2019. *Id.* at 232.

### 1.   Physical extraction of resources is not required to maintain a non-conforming mining use.

The Examiner erroneously determined that the County merely had to establish that "Grump failed to engage in mining and/or gravel extraction for a two-year period after July 1, 2015 to terminate Grump's nonconforming use right." *Id.* at 228. This constrained interpretation of the law is contrary to well-established principles of the diminishing assets doctrine and non-conforming use law in Washington generally.

"A nonconforming use is a use which lawfully existed prior to the enactment of a zoning ordinance, and which is maintained after the effective date of the ordinance, although it does not comply with the zoning restrictions applicable to the district in which it is situated." *Rhod-A-Zalea & 35th, Inc. v. Snohomish Cty.*, 136 Wash.2d 1, 6 (1998) (internal citations omitted). The diminishing assets doctrine is a "substantive adaption of the nonconforming use doctrine to recognize the realities of extractive industries," and specifically applies to mining activities. *City of Univ. Place v. McGuire*, 144 Wash.2d 640, 650 (2001). This doctrine is based on the notion that mining operations are unique. *Id.* While expansions of nonconforming uses are generally prohibited, the diminishing assets doctrine allows mining enterprises to expand into areas where no mining activity has occurred as long as the owner or operator intended to include those previously mined areas as part of the enterprise. *Id.* at 648–52. This is because the "very nature" of mining operations requires maintaining areas "left vacant or devoted to incidental uses until they are needed." *Id.* at 459 (quoting *Du Page Cty. v. Elmhurst Chicago Stone Co.*, 165 N.E.2d 310, 313 (Ill. 1960)) (collecting cases).

GRUMP VENTURES, LLC'S OPENING BRIEF– 9



115042

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

No Washington Court has ever held that, a party must engage in actual extraction of mineral resources to maintain a nonconforming mining use right. In *McGuire*, the Washington Supreme Court upheld the continuance of a mining use right where the previous owner of the mine had mined "in small portions" many years ago, often without permits, and where the parcel at issue had never been mined and was excluded from mining permit applications. *Id.* at 645, 651 (citing *Hansen Brothers Enters, Inc. v. Bd. of Supervisors*, 907 P.2d. 1324 (Cal. 1996)).

In *Hansen*, which informed the Washington Supreme Court's holding in *McGuire*, the California Supreme Court specifically rejected an argument that the mining operator had abandoned its rights because it had ceased mining for longer than the period of discontinuance specified by ordinance. 907 P.2d at 1348. The court concluded that an interpretation of an ordinance to require continuous mining would require unnecessary degradation of the site in order to retain the right to continue a nonconforming use, instead of the occasional rock extraction needed. *Id.* at n.29. Moreover, because mining is "necessarily seasonal and dependent on fluctuating market demand," other courts have similarly refused to find discontinuance of mining even though no mining occurred during the applicable discontinuance period, so long as there was some evidence of an intent to continue mining and use operations. *Id.* at n.30 (collecting cases).[1] As the California Court stated, it would refuse to conclude "that a dairy business operating as a nonconforming use

---

[1] Other state courts have similarly held that minimal activity is sufficient. *See, e.g.*, *Ernst v. Johnson Cty*, 522 N.W.2d 599, 604 (Iowa 1994) ("Due to the nature of the quarrying business, maintenance of the required permits and licenses in combination with minimal activity demonstrates an uninterrupted operation following an initial establishment of the nonconforming use."); *Town of W. Greenwich v. A. Cardi Realty Assocs.*, 786 A.2d 354, 364 (R.I. 2001).

GRUMP VENTURES, LLC'S OPENING BRIEF– 10

115042



Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

with facilities for bottling milk and making and storing butter" would have "lost the right to resume butter manufacturing for several months when the demand for butter was low, stored butter was adequate to meet the need, and the dairy used its cream for other purposes." *Id.* at n.29.

More generally, and consistent with the law surrounding mining uses, minimal evidence of use is considered sufficient to preserve a use's protected status. For example, *Rosema v. City of Seattle*, 166 Wash. App. 293, 300–01 (2012) held that a property owner had maintained a nonconforming duplex use where, although the nonconforming basement unit was not in use as an independent household unit, the property owners maintained the structural capacity necessary for its use as an independent unit. *Tateuchi v. City of Bellevue*, 478 P.3d 142, 151 (Wash. Ct. App. 2020), held that a property owner did not lose their nonconforming use right when it failed to use its rooftop helistop for helicopter takeoffs or landings over the course of a one-year period. The court found that the owner had been "maintaining a 'fully operational' permanent facility for the landing and takeoff of helicopters continually since the [permit] issued." *Id.* There the Court reasoned that because the facility established necessary communication systems, continued to comply with FAA guidelines, and submitted biannual reports to the City, the use remained fully operational. *Id.* Like these cases, the Grump mine has remained fully operational. *See, generally* ECF No. 19-2 at 7–27. The Scott family has maintained the mine, continued to use the mine, and has engaged in permitting activity to continue to use and expand the mine. *Id.*

The Code is consistent with the principles underlying the diminishing assets doctrine. Moreover, because this is a case about nonconforming *use,* the relevant inquiry is

GRUMP VENTURES, LLC'S OPENING BRIEF– 11



1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

whether Grump engaged in "mining" or extraction "*use*." "Mining" is defined as the "extraction of minerals, including solids, such as coal and ores; liquids, such as crude petroleum; and gases, such as natural gases." ECF No. 19-2 at 229.[2] *See also* MCC 8.52.030 (broader definition of mining). "Use" is "the purpose or activity for which the land or building are *designed, arranged, or intended* or for which land or buildings are *occupied or maintained*." (emphasis added) (Moskowitz p.289). But the Examiner concluded that the MCC required Grump to engage in "mining" or "gravel extraction" to maintain its nonconforming mining use without regard for the definition of "use." ECF No. 19-2 at 276. Based on the definition of "use," it is clear that mining use and extraction use comprise far more than the physical act of mining. They include mining related design, construction, arrangement, maintenance, and the intent to extract resources.

The Surface Mining Act, chapter 78.44 RCW, also defines "mining operations" more broadly. "Operations" include "all mine-related activities, exclusive of reclamation" and specifically include "transporting minerals to and from the mine, on-site road maintenance, road maintenance for roads used extensively for surface mining activities, traffic safety, and traffic control." RCW 78.44.031(8), (8)(d). Likewise, "surface mining occurs when operations have created or are intended to create a surface mine as defined by this subsection." RCW 78.44.031(17)(c). *See also* RCW 78.44.220 (specifically excluding interruptions in surface mining due to demand for minerals, maintenance, and repairs).

---

[2] Title 17 of the Code does not specifically define "mining uses" or "gravel extraction uses," the Code provides that "terms not directly defined in the MCC should be given their meaning as defined in Moskowitz, Harvey S. and Lindbloom, Carl, G.; *The New Illustrated Book of Development Definitions*. New Brunswick, NJ, Center for Urban Policy Research, 1993 ("Moskowitz")" *available at* https://books.google.com/books?id=3oJPAAAAMAAJ&focus=searchwithinvolume&q=use; MCC 17.06.010. *See also* ECF No. 19-2 at 1.

GRUMP VENTURES, LLC'S OPENING BRIEF– 12



115042

Grump engaged in such mining and extraction uses and operations between July 1, 2017 and April 3, 2019 including actual mining, digging test pits, and permitting efforts. *See generally* ECF No. 19-2 at 24-27. As detailed in Section II.B, Grump hired consultants to prepare its Reclamation Permit and associated materials, applied for and obtained the SM-6, initiated the SEPA process, and applied for an FPA. *Id.* Even after Grump requested that the County withdraw its SEPA determination, it continued to engage consultants to perform traffic and hydrological studies. ECF No. 19-1 at 98. In addition, heavy mining machinery was housed at the mine. ECF No. 19-2 at 8. While the SM-6 is sufficient alone to establish that Grump had maintained its nonconforming use status, the record is replete with evidence of Grump's ongoing mining uses and operations.

> **2.    The County's issuance of the SM-6 was a final land use decision that conclusively established that Grump had engaged in mining activities.**

The Examiner correctly concluded that the SM-6 issued on June 30, 2017 was a final land use decision subject to LUPA. Under LUPA, any appeal of a land use decision must be appealed within 21 days after issuance of a decision. RCW 36.70C.040(3); *Chelan Cty. v. Nykreim*, 146 Wash.2d 904, 940 (2002). LUPA's purpose is to "establish[] definite time limits" and to give property owners "assurance in developing their property." *James v. Cty. of Kitsap*, 154 Wash.2d 574, 589 (2005). If a land use decision is not appealed to a court within LUPA's timeframes, the land use decision is unreviewable—even if the decision was illegal, void ab initio, or incorrectly decided. *Habitat Watch v. Skagit Cty.*, 155 Wash.2d 397, 407 (2005). The SM-6 was not appealed within 21 days of its issuance. The Examiner correctly determined it could not be subject to collateral attack. ECF No. 19-1 at 410.

GRUMP VENTURES, LLC'S OPENING BRIEF– 13

115042



1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

*a. The Examiner improperly allowed the County to collaterally attack the SM-6.*

The Examiner nevertheless proceeded to allow the County to challenge the findings that led to its issuance by creating a new record about Grump's mining uses prior to June 30, 2017. *Id.* at 407. The Examiner incorrectly determined that Grump's nonconforming use right could be extinguished based upon inactivity prior to issuance of the SM-6, so long as the inactivity extended past the date on which it was issued. *Id.* According to the Examiner, "if the period of inactivity extended from July 31, 2015 through July 31, 2017" Grump would "have lost its nonconforming use status even though 23 of the 24 months of inactivity occurred prior to the issuance of the SM-6 Interpretation on June 30, 2017[.]" *Id.* (also stating that "[w]hen Mason County was faced with assessing the nonconforming use status of the mining enterprise on June 30, 2017, it had not yet been inactive for two years so at that time it had not lost its nonconforming use rights under MCC 17.05.016[*sic*](a)"). Thus, Grump and DNR could only rely on the County's SM-6 decision for one month.

This determination is an erroneous interpretation and application of law and undermines the purpose and utility of the SM-6. First, the SM-6 conclusively established the existence of Grump's "mining use" as of June 30, 2017. Any challenge to that conclusion constitutes an impermissible collateral attack on the final land use decision that Grump's mine was a valid non-conforming use right subject to the diminishing assets doctrine. Grump was entitled to rely on that decision and the starting point for determining whether Grump subsequently abandoned its non-conforming use must begin on the date the County issued the SM-6. To allow otherwise, amounts to an end-run around LUPA's goal of providing finality and certainty of land use decisions. *See* RCW 36.70C.010 (stating the

GRUMP VENTURES, LLC'S OPENING BRIEF– 14

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

115042

purpose of LUPA is to "provide consistent, predictable, and timely judicial review").

Moreover, the Examiner's conclusion that Grump's nonconforming use right may be extinguished a month, a week, or a day after the County issued its decision affirming such right is at odds with the purpose of the SM-6. An SM-6 is a required approval necessary to obtain a DNR Reclamation Permit. WAC 332-18-01002. The County must make two findings when it issues an SM-6: (1) the proposed surface mine been approved under local zoning and land-use regulations; and (2) the proposed subsequent use of the land after reclamation is consistent with the local land-use plan/designation. ECF No. 19-1 at 104. The SM-6 memorializes the County's conclusion that the proposed surface mining is approved and the Applicant and DNR are entitled to rely on these findings.[3] The purpose of the SM-6 is to ensure that the proposed mine is consistent with the County's regulatory scheme as a prerequisite to issuance of a Reclamation Permit. *See* WAC 332-18-01002 (entitled Land use approval and regulation of operations).  It prevents DNR or the applicant from wasting resources applying for a Reclamation Permit only be told at the end of the process that it is inconsistent with local land-use regulations and zoning. ECF No. 21-1 at 62:10–16. It would be antithetical to the SM-6's purpose to allow the County to issue an SM-6—providing assurances that the proposed use is allowed—only to rescind it as early as a day later.

---

[3] *See, e.g.*, ECF No. 19-1 at 104 (the title of the SM-6 is "County or Municipality Approval for Surface Mining); *accord Nykreim*, 146 Wash.2d at 933 ("[I]f this court allows local government to rescind a previous land use approval without concern of finality, innocent property owners relying on a county's land use decision will be subject to change in policy whenever a new County Planning Director disagrees with a decision of the predecessor director.").

GRUMP VENTURES, LLC'S OPENING BRIEF– 15



1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

115042

*b. The Examiner's finding of a hobby mine supports Grump's nonconforming use right.*

Finally, the Examiner's conclusion about Grump's "nonconforming use rights for hobby mine use" reflect his misunderstanding of the diminishing assets doctrine. ECF No. 19-8 at 141. The Examiner concluded that "the nonconforming use rights affected by this Decision are for the mining proposed in Grump's reclamation permit. They are not for the continuation of Grump's historical sporadic and infrequent use." *Id.* This is at odds with the diminishing assets doctrine, which specifically allows for the land as a whole to be considered a nonconforming use. *McGuire*, 144 Wash.2d at 651 ("The proper scope of a lawful nonconforming use in an exhaustible resource is the whole parcel of land owned and intended to be used by the owner at the time the zoning ordinance was promulgated.").

The Examiner also relied on two inapposite cases: *Vickers v. Franklin Cty. Bd. of Comm'rs*, 444 P.3d 380, 2019 WL 3242274 (Kan. Ct. App. 2019) and *Polk Cty. v. Martin*, 636 P.2d. 952 (Or. 1981). ECF No. 19-8 at 141–42. Neither case supports the proposition that Grump's nonconforming use can be relegated to a 1.18 acre hobby mine. *Vickers*, found that "a nonconforming quarry use is not abandoned simply because there is no rock mining, crushing, or blasting." 2019 WL 3242274 at *8 (citing *River Springs, Ltd. Liability Co. v. Bd. of Teton Cty. Comm'rs*, 899 P.2d 1329, 1335 (Wyo. 1995) (small quarry that was substantially dormant for six years was not abandoned when small quantities were previously removed). And, while the Supreme Court of Oregon stated in *Polk County* that "a sporadic and intermittent use may give rise to a permitted nonconforming use, with the extent of the permitted nonconforming use limited to the sporadic and intermittent use that existed prior to the enactment of the zoning ordinance" that case did not involve application

GRUMP VENTURES, LLC'S OPENING BRIEF– 16

115042

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

1   of the diminishing assets doctrine. 636 P.2d at 957.

2   Moreover, the Examiner's "hobby mine" finding is at odds with his prior ruling that

3   the SM-6 could not be collaterally attacked. As discussed above, the SM-6 conclusively

4   established that the Grump's mine was "consistent with diminishing assets doctrine." ECF

5   No. 19-1 at 44. By distinguishing hobby mine use from the proposed mine expansion use

6   the Examiner directly assailed the County's previous finding about the proposed mine's

7   consistency with the diminishing assets doctrine. ECF No. 19-8 at 141. In addition to

8   misinterpretation and misapplication of the law, this also amounted to a failure to follow

9   unlawful procedure, which is another basis for reversal under LUPA.

10

11          **3.      MCC 17.05.016(a) requires an intent to abandon to extinguish a
                     nonconforming use.**

12

13   The Examiner also misinterpreted MCC 17.05.016(a), which states that "if any non-

14   conforming use of land and/or building is abandoned, or ceases for any reason whatsoever

15   . . . for a period of two years or more" then the nonconforming use right is extinguished.

16   The Examiner erroneously held that the phrase "ceases for any reason whatsoever" rendered

17   Grump's intent to continue mining irrelevant. ECF No. 19-1 at 426. Courts construe

18   municipal ordinances according to the rules of statutory interpretation. *Dep't of Transp. v. City*

19   *of Seattle*, 192 Wash. App. 824, 837–38 (2016) (internal citations omitted).  When the

20   meaning of code language is plain on its face, the court must give effect to that plain

21   meaning as an expression of legislative intent. *Id.* at 837.

22

23   As an initial matter, the SM-6 Recission provides little justification for the County's

24   conclusion that Grump's use is no longer a legal nonconforming use. ECF No. 19-1 at 7–8.

25   It simply announced that the subject parcels no longer benefit from the diminishing assets

GRUMP VENTURES, LLC'S OPENING BRIEF– 17

**Van Ness**
**Feldman** LLP

115042

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

doctrine. *Id.* at 7. The only remote basis provided for this conclusion is that "current zoning does not support surface mining and any past surface mining has been *abandoned* for a period of more than two years." *Id.* (emphasis added). That is, the SM-6 Recission was based upon the alleged abandonment of the nonconforming use, not cessation of the use. Yet, when it issued the SM-6, the County concluded that that the diminishing asset doctrine applied—a conclusion inconsistent with the concept of abandonment.[4] And, a use cannot be abandoned absent an intent to do so. *Van Sant v. City of Everett*, 69 Wash. App. 641, 649 (1993). The Examiner's attempt to rescue the County's SM-6 Recission from this fatal flaw by asserting a cessation of mining is too little too late and amounts to little more than post-hoc rationalization.[5]

The Examiner's conclusion that MCC 17.05.016(a) does not require evidence of an intent to abandon in order to extinguish a nonconforming use disregards the law of nonconforming use in Washington when coupled with the diminishing assets doctrine. Once a nonconforming use is established, "the burden shifts to the party claiming abandonment or discontinuance of the non-conforming use to prove such." *Id.* at 648. Moreover, nonconforming uses are constitutionally protected vested property rights that "cannot be lost or voided easily." *Id.* at 649. This "properly [] high burden of proof," *id.*, is even higher when coupled with the diminishing assets doctrine. The diminishing assets doctrine

---

[4] The diminishing asset doctrine requires: (1) the owners' manifested objective intentions to mine the new areas; and (2) intentions existed at the time their uses became nonconforming. *Hansen*, 907 P.2d at 1336–37.
[5] Post hoc rationalizations are disfavored. *See generally* RCW 34.05.570(1)(b) ("[t]he validity of agency action shall be determined in accordance with the standards of review provided in this section, *as applied to the agency action at the time it was taken*.") (emphasis added); RCW 64.40.020(1); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("the courts may not accept appellate counsel's post hoc rationalizations for agency action.").

GRUMP VENTURES, LLC'S OPENING BRIEF– 18

115042

**Van Ness**
**Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

operates as an exception or a "substantive adaption of the nonconforming use doctrine to recognize the realities of extractive industries." *McGuire*, 144 Wash.2d at 650. The doctrine acknowledges that mining is a unique use and cannot be discontinued if there is evidence of an intent to continue mining. *Hansen*, 907 P3d. at 1348 n.30.[6]

The MCC employs the terms "abandon" and "cessation" interchangeably. Both require an intent to discontinue the non-conforming use. Per Moskowitz, "abandonment" means "the relinquishment of property or a *cessation of use of the property*, by owner or lessee *without any intention* of transferring rights to the property to another owner or *of resuming the use of the property*." (emphasis added). Interpreting the terms "cessation" and "abandonment" interchangeably is consistent with Washington case law requiring an examination of intent for cessations of activity. *Compare e.g..*, *King Cty. v. High*, 36 Wash.2d 580, 582 (1950) ("temporary cessation of business or discontinuance" does not terminate non-conforming use rights) *and Andrew v. King Cty*, 21 Wash. App. 566, 571 (1978) (same) *with Choi v. City of Fife*, 60 Wash. App. 458, 464–65 (1991) ("vacate" does not require intent and finding the facility vacated when it had not been used for any purpose). *See also* RCW 78.44.220 (stating a reclamation permit may be deemed abandoned when "all surface mining has *ceased*") (emphasis added).

Under MCC 17.05.016(a) a nonconforming use can be extinguished if it "is abandoned, or ceases for any reason whatsoever . . . for a period of two years or more." The phrase "for any reason whatsoever" does not alter the fact that abandonment of a non-

---

[6] *See also Union Quarries, Inc. v. Bd. of Cty Comm'rs of Johnson Cty*., 478 P.2d 181, 187 (Kan. 1970); *S. Cty. Sand & Gravel Co. v. Town of Charlestown*, 446 A.2d 1045, 1047 (R.I. 1982); *Kuhl v. Zoning Hr'g Bd. of Greene Twp.*, 415 A.2d 954, 957 (Pa. 1980).

GRUMP VENTURES, LLC'S OPENING BRIEF– 19

115042



1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

conforming mine subject to the diminishing assets doctrine requires proof of intent to abandon. And, to the extent the MCC is ambiguous, it must be "strictly construed" in Grump's favor, because land use ordinances are in derogation of landowner's common-law right to use private property so as to realize its highest utility. *Sleasman v. City of Lacey*, 159 Wash.2d 639, 643 n.4 (2007). In addition, the phrase "any reason whatsoever" is not inconsistent with requiring proof of intent. Washington Courts have repeatedly distinguished the difference between temporary and permanent cessation and consistently held that the former does not result in the loss of a use right. *See, e.g.*, *Tateuchi*, 478 P.3d at 151 ("a temporary cessation does not equate with abandonment.") (citing *Andrew*, 21 Wash. App. at 571). Even use of the term "Abandonment" in the title of this specific provision, "Abandonment; Reconstruction," suggests that intent is a necessary prerequisite to extinguishment of a nonconforming use. MCC 17.05.016.

### B. The Decision's finding that Grump ceased mining operations for two years is not supported by substantial evidence.

The Decision is not supported by substantial evidence when viewed in the light of the record as a whole because: (1) the Examiner erred when he favored HCGMOA's expert testimony that he acknowledged was based upon an imprecise and flawed methodology; and (2) the Examiner disregarded Grump's substantial evidence, much of which was unrefuted.

The Examiner found that the County and HCGMOA established a *prima facie* case that Grump had not mined between 2015 and 2018. He based his decision in large part on the expert testimony of Rick Glenn. ECF No. 19-8 at 127.  Mr. Glenn is an expert in photogrammetry and used aerial and terrestrial photographs to determine that the Grump

GRUMP VENTURES, LLC'S OPENING BRIEF– 20

Van Ness
Feldman LLP

115042

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

mine had not been logged since 1989; the perimeter of the pit had not moved since 2000; and, that no gravel had been extracted since 2012. *Id.* Mr. Glenn's testimony was not based on reliable methodology.[7]  In his testimony Mr. Glenn claimed that "photogrammetry is so accurate that it is rarely disputed." *Id. see also* ECF No. 21-1 at 168:9–10 (Mr. Glenn stating, that "photogrammetry is so accurate that you can't really dispute it"). On cross-examination, however, he revealed that he never actually used this purportedly precise methodology but instead used images available from public records. ECF No. 21-1 at 218:17–219:5. As the Examiner acknowledged, Mr. Glenn's methods are not "found to be as 100% accurate as he claimed." ECF No. 19-8 at 128. For instance, Mr. Glenn claimed that there was no logging on the 66.5-acre Property after 1989. *Id.* However, he failed to recognize that Russell Scott had undisputedly logged over 85,000 board feet of the area in 2011. *Id.* ECF No 21-3 at 48:4-54:1. He also misidentified a surface of a parking lot as asphalt, when it was clearly lava rock. *Id.* The Examiner nevertheless relied heavily on Mr. Glenn's testimony. *See id* at 127–130.

The County has the burden to establish that Grump lost its nonconforming use right via cessation of mining activity for a period of two years. *Van Sant*, 69 Wash. App. at 649–50. The Examiner's complete disregard of Grump's uncontroverted evidence effectively shifted the evidentiary burden from the County to Grump. *Id.* Misallocation of the burden and requiring the property owner to prove continued use in a case involving nonconforming use rights constitutes error. *Id.*

---

[7] *State v. Arndt*, 194 Wash.2d 784, 803–04 (2019) ("ER 702 expressly allows for the exclusion of expert testimony when an expert fails to adhere to reliable methodology"); *Lakey v. Puget Sound Energy, Inc.*, 176 Wash.2d 909, 918–19 (2013) (same).

GRUMP VENTURES, LLC'S OPENING BRIEF– 21

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

The Examiner ignored much of Grump's evidence because "[a]lmost all of the documentation and testimony provided by Grump was made by people closely associated with the Grump business." ECF No. 19-8 at 119. He noted that "[e]very single financial document and receipt presented by Grump was a document prepared by Grump or Peninsula Topsoil that could have been easily manufactured for the appeal hearing." *Id.* Similarly, he found that it "would have been very tempting at that point to stretch the mining activity that occurred in February 2017 to include some additional mining." *Id.* at 137.  The Examiner failed to support this finding with a citation to any evidence and did not make any finding that Grump's evidence was manufactured or false.[8]

Moreover, the Examiner made no similar findings with regard to the project opponents' evidence even though they had an equally strong incentive to manipulate evidence to support their case. *Id.* at 143. The Examiner inferred witness bias based on Grump's financial stake in the expanded mine. *Id.* at 134–35. But he failed to discount the credibility of HCGMOA witnesses, even though many own property in the area. *Id.* at 130.

**C.    The Decision violates Grump's constitutional rights.**

The Decision violated Grump's constitutional rights, specifically it's due process rights under both the United States and Washington Constitutions.[9] Grump's constitutionally protected interests include its vested right in a nonconforming use, goodwill in its business, and the right to devote its land to legitimate use. Property, as defined by the

---

[8] Specifically, the Examiner disregarded testimony regarding test pit work in April of 2017, ECF No. 21-2 at 77:16–79:18, and direct testimony that mining occurred on April 22, 2017. *Id.* at 74:16-77:15; 153:4–157:7. *See generally* ECF No. 19-8 at 130–40.

[9] The due process clause of the Washington State Constitution is coextensive with the due process clause of the United States Constitution. *Nielson v. Wash. State Dep't of Licensing*, 177 Wash. App. 45, 52 n.5 (2013).

GRUMP VENTURES, LLC'S OPENING BRIEF– 22

**Van Ness Feldman** LLP

1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

115042

Constitution, includes "all benefits to which there is a legitimate claim of entitlement." *Maytown Sand and Gravel, LLC v. Thurston Cty.*, 191 Wash.2d 392, 430 (2018) *abrogated on other grounds in Yim v. City of Seattle*, 194 Wash.2d 682 (2019). It is uncontested that Grump had a valid SM-6, a vested right in a nonconforming use, which is a protected property interest. *McGuire*, 144 Wash.2d at 652 ("nonconforming uses are treated like vested property rights, and may not be voided easily"); *McMilian v. King Cty.*, 161 Wash. App. 581, 599 (2011) ("It is the property owner whose property rights are affected by changes in zoning legislation, and, thus, it is the property owner who is afforded constitutional due process protection."). In addition, Grump has a property interest in the goodwill of its business and devoting its land to legitimate uses. *See Hardesty v. Sacramento Metro. Air Quality Mgmt. Distr.*, 307 F.Supp.3d 1010, 1028–29 (E.D. Cal. 2018) *affirmed in part and rev'd and remanded on other grounds* 824 Fed. Appx. 474 (9th Cir. 2020).

The County's failure to either provide Grump notice that it was considering the SM-6 Recission or state its reasons for doing so deprived Grump of its constitutional right to due process. The County's Decision was an "abuse of power lacking any reasonable justification in the service of a legitimate governmental objection." *Maytown*, 191 Wn.2d at 433. As discussed above, in December 2019 the County had private meetings with "concerned" citizens, namely members of HCGMOA, regarding Grumps' mine. Conveniently, a month later, the County issued its SM-6 Recission.[10] ECF No. 19-1 at 128–31. It is apparent that the County intended to rescind Grump's SM-6 a year and a half prior

---

[10] Additionally, there is evidence that a County Commissioner, Mr. Neatherlin also discussed Grump's purported "nonuse abandonment" with Mr. Carey, a project opponent" and stated that Grump would need to "start over with rezoning" and "try to get the property rezoned for gravel mining." ECF No. 19-1 at 450.

GRUMP VENTURES, LLC'S OPENING BRIEF– 23

115042

Van Ness
Feldman LLP

1191 Second Avenue Suite 1800
Seattle, WA 98101-2996
(206) 623-9372

to the SM-6 Recission. If, as the Hearing Examiner found, Grump failed to mine for a period of two years between April 2017 and April 2019, then the County delayed its decision in bad faith while Grump expended considerable time and resources to expand the mine. The County's decision was motivated by political pressure and was arbitrary and irrational. *Hardesty*, 307 F.Supp.3d at 1035; *see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) (inexplicable rejection of a proposed development plan raised an issue as to whether the city was motivated by political pressure from the community rather than regulatory concerns); *Lockary v. Kayfetz*, 917 F.2d 1150, 1155–56 (9th Cir. 1990); *Swenson v. Siskiyou Cty.*, 498 F. App'x 719, 721 (9th Cir. 2012).

Moreover, as discussed above, the Examiner was not an impartial decision maker. Among other things, the Decision disregarded Grump's evidence without explanation, singled out and maligned Grump, exhibited bias, and made findings inconsistent with prior rulings. This conduct "shocks the conscience and interferes with rights that are implicit in the concept of ordered liberty" *Maytown*, 191 Wn.2d at 430. The right to an impartial decision maker is implicit in the concept of ordered liberty. *Id.* at 435. Because decisions made in a climate of political pressure, like this one, are more susceptible to an abuse of authority, they "require[] a higher degree of judicial scrutiny." *Polygon Corp. v. City of Seattle*, 90 Wash.2d 59 (1978). Accordingly, the Decision should be overturned.

## V.    CONCLUSION

For the foregoing reasons Grump respectfully requests that this Court reverse the Decision and reinstate Grump's SM-6.

///

GRUMP VENTURES, LLC'S OPENING BRIEF– 24

115042



1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

Respectfully submitted this 19th day of February, 2021.

VAN NESS FELDMAN LLP

*s/ Dale N. Johnson*
Brent Carson, WSBA #16240
Dale N. Johnson, WSBA #26629
Sophia E. Amberson, WSBA #52528

1191 Second Avenue, Suite 1800
Seattle, WA 98101-2996
Tel:  (206) 623-9372
Fax:  (206) 623-4986
E-mail: brc@vnf.com
Email: dnj@vnf.com
Email: samberson@vnf.com

*Attorneys for Grump Ventures, LLC*

GRUMP VENTURES, LLC'S OPENING BRIEF– 25

115042



1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372

1

**CERTIFICATE OF SERVICE**

2

3        I, certify that on February 19, 2021, I electronically filed the foregoing, Grump

4   Ventures, LLC's Opening Brief Under the Land Use Petition Act, Chapter 36.70C RCW,

5   with the Clerk of the Court using the CM/ECF System, which will send notification of

6   said filing to the attorneys of record that have, as required, registered with the Court's

7   system.
         I certify under penalty of perjury under the laws of the State of Washington that

8   the foregoing is true and correct.

9
         EXECUTED at Seattle, Washington on this 19th day of February, 2021.

10

11

12                                          *s/ I'sha M. Willis*
                                            I'sha M. Willis, Declarant

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF SERVICE – 1



1191 Second Avenue Suite 1800
Seattle, WA  98101-2996
(206) 623-9372